BUNDA, Appellant, vs. JACOBUS and another, Respondents.

*March 9—April 7, 1937.*

o

452

For the appellant there was a brief by *McHale & Berner* of Antigo, and oral argument by *Artemas F. Berner*.

*Thomas E. McDougal* of Antigo, for the respondents.

Rosenberry, C. J. The facts in this case can best be understood in connection with the accompanying diagram:

The defendant, Philomena Jacobus, acquired title from her husband. She also acquired title to a strip of land lying between the line (A) (B) and the right of way of the Chicago & North Western Railway Company, which title came to her

husband by deed dated February 8, 1909. The plaintiff acquired title to his premises in 1918. His predecessor in title, Albert Cahak, had been in possession of the premises for twenty-five years prior thereto. During all of this period, that is from approximately 1893 to the time of the trespass complained of, there was an east-and-west fence on the north boundary of the plaintiff's line extending west to the fence on the easterly right of way of the Chicago & North Western Railway Company. There was also a fence on the south boundary line. During all that time the plaintiff and his predecessor in title used the inclosed strip of land for pasturage purposes. There is some evidence that in 1918 Cahak cut a tree on this disputed strip and that he was advised to see Mr. Jacobus about it. For some years there was a logging road running north and south over this strip.

The court found that the plaintiff, after he purchased his farm in 1918, requested the Jacobus family to give him the first chance to buy the strip. From the testimony of Philomena Jacobus this appears to have been after the death of her husband in 1926. The evidence establishes without dispute that the possession of the plaintiff was open, notorious, adverse, and hostile. The Jacobuses never asserted any right to these premises until at or about the time of the trespass complained of, which was in the late winter of 1934–35. The only circumstance indicating that the plaintiff did not hold adversely, and to this the trial court seems to have attached great importance, was the fact that the plaintiff sought to buy his peace by purchasing whatever rights Mrs. Jacobus had in the premises.

Upon the undisputed facts as found by the trial court, the plaintiff and his predecessor in title had inclosed the lands by a substantial fence and used the same for more than twenty-five years. There is no contention that the use was permissive or on any other basis than that the plaintiff and his prede-

cessor in title claimed to be the owner of the premises. Such inclosure and use for the prescribed period gave the plaintiff and his predecessor in title a prescriptive right to the land in question. This had fully ripened in Cahak prior to the purchase of the premises by the plaintiff, Cahak having been in possession for twenty-five years. The plaintiff was in possession an additional seven or eight years before the talk of purchase began. Mrs. Jacobus testified: "The first year he asked me and probably nearly every year." In another connection she said it was after her husband died in 1926. It is apparent that she referred to a conversation after she acquired title. Cahak, who built the fence, testified that he supposed that the east line of the Chicago & North Western Railway Company right of way was his west line, and fenced and claimed the land accordingly. Plaintiff testified that his conversation with Mrs. Jacobus was in the fall of 1934; that he proposed to pay the defendants something to avoid trouble inasmuch as he thought that their deed to the land gave them some interest in it. Thereafter he found out that they had no interest.

There is some dispute as to the location of the west boundary line of the northwest quarter of section 32. Its location, however, becomes immaterial in this case because of the fact that the entire tract was claimed by Cahak and by the plaintiff and fenced. It is considered that the plaintiff established his title to the premises in question, and should have had judgment for the damages done by the trespass committed.

*By the Court.*—Judgment appealed from is reversed, and cause remanded to the trial court with directions to assess the plaintiff's damages and to enter judgment for the plaintiff accordingly. If in the opinion of the trial court justice requires it, further evidence may be taken as to the amount of the damages.